IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


MOSES ECHEVARRIA,                        )
                                         )
          Petitioner,                    )
                                         )
     v.                                  )
                                         )   No. 09 C 5686
UNITED STATES OF AMERICA,                )
                                         )
          Defendant.                     )
                                         )
                                         )

## MEMORANDUM OPINION AND ORDER

On July 25, 2008, petitioner Moses Echevarria ("Echevarria")
pleaded guilty to conspiracy to possess with intent to distribute
cocaine in violation of 21 U.S.C. § 846, and subsequently was
sentenced to 121 months' imprisonment.     Echevarria now moves
pursuant to 28 U.S.C. § 2255 to vacate his plea and his sentence.
For the reasons explained below, Echevarria's motion is denied.

## I.    BACKGROUND

The facts of the case are straightforward. Echevarria was
introduced to co-defendant George Chavez ("Chavez") in 2006.
Chavez agreed to provide Echevarria with wholesale amounts of
cocaine.    From April 2006 until the summer of 2006, Echevarria
bought between 4.5 ounces and half a kilogram of cocaine from
Chavez on a weekly basis.    After purchasing the cocaine, Echevarria
resold it to others in the Chicago area.    In the summer of 2006,
Echevarria began buying cocaine on a weekly basis from Jose Perez

("Perez"). As before, Echevarria continued to re-sell the cocaine to others. On September 26, 2006, federal agents seized Perez's vehicle, along with several kilograms of cocaine. Echevarria was later apprehended and charged with conspiracy.

## II. DISCUSSION

Relief under § 2255 is reserved for extraordinary situations. *See, e.g.*, *Hays v. United States*, 397 F.3d 564, 566 (7th Cir. 2005). To obtain relief under § 2255, a convicted defendant "must show that the district court sentenced him 'in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.'" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting 28 U.S.C. § 2255). Hence, "relief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (quotation marks removed).

Echevarria challenges the validity of his guilty plea on several grounds. First, he claims that he received ineffective assistance of counsel in deciding to enter his plea. In addition, he claims that he is actually innocent of the crime of conspiracy. Finally, he accuses the government of prosecutorial misconduct. I consider each of these contentions in turn.

## A.    Ineffective Assistance of Counsel

Echevarria first argues that his plea and sentence should be set aside because he received ineffective assistance of counsel. Under the Sixth Amendment of the U.S. Constitution, criminal defendants have the right to effective assistance of counsel. *See, e.g.*, *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009). The Seventh Circuit has held that the right to effective assistance of counsel "extends to assistance rendered when deciding whether to reject a plea offer." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007); *Toro v. Fairman*, 940 F.2d 1065, 1067 (7th Cir. 1991). To succeed on a claim of ineffective assistance, Echevarria "must prove '(1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result.'" *Id.* at 457-58 (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). In order to satisfy the latter ("prejudice") prong of the test, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (quotation marks omitted); *see also McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996).

Echevarria argues that his counsel was constitutionally ineffective in three respects: (1) by failing to challenge the use of his prior convictions under state law in determining his sentence; (2) by allowing him to plead guilty to conspiracy despite

-3-

the lack of evidence to support the charge; and (3) by failing to challenge the drug amounts that were attributed to him and that were used in calculating his sentence. None of these claims is persuasive.

### 1. Use of Prior State Convictions

Echevarria first argues that his attorney was ineffective for failing to object to the use of his prior convictions under state law in calculating his sentence. He bases his argument on the Fifth Amendment of the Constitution, which provides criminal defendants with the right to indictment by grand jury. See U.S. Const. amend. V. ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger[.]"). Echevarria further notes that he was prosecuted for his prior state law offenses by information rather than by indictment. As a result, he claims that his state law convictions were "illegally obtained under federal law."

The problem with this argument is obvious: ever since the Supreme Court's decision in *Hurtado v. California*, 110 U.S. 516 (1884), it has been settled beyond peradventure that the Fifth Amendment's Grand Jury Clause does not apply to the states. *See also Holman v. Gilmore*, 126 F.3d 876, 884 (7th Cir. 1997). As a result, Echevarria had no right to be prosecuted by grand jury

indictment in connection with his state law offenses. *Bae v. Peters*, 950 F.2d 469, 477 (7th Cir. 1991) ("A federal court may grant habeas corpus relief to state prisoners only for violations of federal law. [The defendant] had no federal constitutional right to be indicted by a grand jury, so an allegation that an indictment amendment violated his right to be indicted by a grand jury should not be sufficient grounds to grant habeas corpus."). Since Echevarria was prosecuted in state court, it is simply irrelevant whether he would have been entitled to indictment by grand jury if he had been prosecuted for the offenses in federal court.

Echevarria goes on to argue that, notwithstanding *Hurtado* and its progeny, due process requires application of the Grand Jury Clause to the states. However, even if I found this argument convincing -- and I do not -- I remain bound by Supreme Court and Seventh Circuit precedent on this point, and that precedent unambiguously holds that the Grand Jury Clause is inapplicable to the states.

In short, there was nothing improper about the use of Echevarria's prior state law convictions in calculating his sentence in this case, and his attorney therefore did not err in

failing to object to the use of his prior convictions under state law in determining his sentence.[1]

## 2. Conspiracy

Echevarria next argues that his attorney was ineffective for allowing him to plead guilty to conspiracy because he claims that the evidence against him was insufficient to convict him of the charge. He notes that establishing a conspiracy requires the government to show that two or more people agreed to commit an illegal act, and that the defendant knowingly and intentionally participated in the agreement. *See, e.g.*, *United States v. Haynes*, 582 F.3d 686, 698 (7th Cir. 2009). According to Echevarria, this means that the government must prove that the conspirators "intended to act together for their shared mutual benefit within the scope of the conspiracy charged." Pet. at 17. He insists that there is no evidence in this case that he had any such broader intention. Instead, he claims, his relationship with the other alleged co-conspirators was merely that of a buyer or seller, and that "[a]ll players in this so-called conspiracy were independant [sic] players no-one knew what the other participants were doing with their drugs once they were obtained by the buyer." Pet. at 17.

---

[1] The next section of Echevarria's petition is entitled "Indictment." The discussion, which runs to six pages, is essentially a critique of the American criminal justice system in general, and of the law of habeas corpus and the right to counsel in particular. Echevarria makes no attempt to relate this discussion to his own case. As a result, it warrants no further consideration here.

I am unpersuaded. The argument presented here is on all fours with the one advanced -- and rejected -- in *United States v. Highsmith*, No. 97 C 2880, 1997 WL 665745 (N.D. Ill. Oct. 15, 1997). There, as here, the petitioner claimed that his attorney was ineffective for allowing him to plead guilty to a conspiracy charge that (so the petitioner claimed) was not supported by the evidence. *Id.* at *1. And there, as here, the basis for the defendant's claim was that his relationship with other alleged conspirators was limited to that of buyer and seller and thus did not amount to a true conspiracy. *Id.* In rejecting this argument, Judge Aspen identified the many different factors in this Circuit's case law that have been regarded as evidence of a conspiracy. In particular, he cited "[f]actors such as multiple sales, the purchase of a quantity of drugs too large to be for personal use, and especially consignment sales." *Id.* (citations omitted). Finding that such factors were present in the petitioner's case, Judge Aspen concluded that the petitioner "was part of an elaborate drug distribution system, and his suggestion that his attorney was ineffective for not trying to hide this fact is absurd." *Id.*

The same factors noted in *Highsmith* are present here: during his plea colloquy, Echevarria confessed to having engaged in transactions on a weekly basis over the course of several months, first with Chavez, and later with Perez. Moreover, Echevarria admitted -- and admits in his petition -- that he made the

purchases not for personal use but to sell to others.  Finally, Echevarria also confessed to transacting at least one consignment sale.  Specifically, he acknowledged during his change of plea hearing that "[o]n at least one occasion Perez provided defendant with a full kilogram of cocaine, half of which was paid for up front and half of which was provided with the understanding that the defendant would repay Perez at a future date."  Change of Plea Tr. at 10.  As Judge Posner has observed, "[s]ales on consignment may . . . establish a conspiracy since they indicate an ongoing relationship of the sort that lowers the transaction costs of committing crimes, and also show that the seller has a stake in the success of the buyer's enterprise.  *United States v. Lechuga*, 994 F.2d 346, 363 (7th Cir. 1993) (citations and brackets omitted).  This is not to say that a single credit transaction alone is sufficient to establish the existence of a conspiracy.  *See, e.g.*, *Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir. 1994).  Nevertheless, it is a relevant factor that, when taken together with the other evidence in the case, can help prove that the parties were engaged in a conspiratorial relationship.  *See, e.g.*, *United States v. Baker*, 1 F.3d 596, 597 (7th Cir. 1993) (citing *United States v. Saunders*, 973 F.2d 1354, 1360 (7th Cir. 1992)); *see also United States v. Sanchez*, 251 F.3d 598, 602 (7th Cir. 2001) (noting that "[c]redit drug sales are not a required element

of a conspiracy to distribute drugs" but are "one factor from which the existence of a conspiracy can be inferred").

This evidence, when taken together with the evidence concerning the frequency of the purchases and sales and the amount of cocaine involved, was sufficient to convict Echevarria for conspiracy. It follows that Echevarria's attorney was not ineffective for allowing him to plead guilty to the charge.

### 3.  Failure to Challenge Drug Quantities

Finally, Echevarria contends that his attorney was constitutionally ineffective for failing to challenge the amount of cocaine that was attributed to Echevarria in determining his sentence. Echevarria's argument on this point is twofold: first, he argues that he was erroneously held responsible for the entire amount of cocaine involved in the conspiracy, rather than the specific amounts of the drug with which he personally was involved; second, he challenges the reliability of the evidence on which the drug amounts were estimated. Neither contention is persuasive.

In support of his first contention, Echevarria is correct in noting that a "defendant convicted of conspiracy is not automatically liable for the acts of his coconspirators," but instead "may be held liable only for those acts or omissions that were both made in furtherance of the conspiracy and foreseeable to the defendant." *United States v. Dean*, 574 F.3d 836, 844-45 (7th Cir. 2009) (citing U.S.S.G. § 2D1.1). Echevarria claims that his

sentence was calculated without any attempt to determine the scope of his involvement in the conspiracy, and that he was held responsible not simply for the amount of cocaine that he bought and sold, but also for amounts bought and sold by other parties to the conspiracy.

This contention simply is not true. Only amounts that Echevarria admitted to being personally involved with were taken into account in calculating his sentence. In the plea agreement, as well as at the change of plea hearing, he specifically admitted that "the total amount of drugs that are involved in this conspiracy with which the defendant was personally involved or which were reasonably foreseeable to him was at least eight kilograms of cocaine." Plea Agreement ¶ 6; Plea Tr. 10:18 - 11:2. The 8-kilogram amount was used in calculating his base offense level, which, pursuant to Guidelines § 2D1.1(c)(4), was 32. Presentence Report at 5.

Moreover, the underlying calculations used to arrive at this figure were perfectly sound. As the government explains, Echevarria admitted to having purchased between 128 and 500 grams of cocaine from Chavez and Perez on a weekly basis between the months of April 2006 and September 2006. Presentence Report at 3; Gov't Resp. Br. at 12. The average of these amounts is 314 grams of cocaine per week. When that figure is multiplied by the number of weeks in question (i.e., 24), the product is 7536 grams or more

-10-

than 7 kilograms.  In addition to this amount, Echevarria admitted to purchasing a kilogram of cocaine on at least one other occasion. Adding these amounts together yields a total of more than 8.5 kilograms.  Resp. Br. at 12.  That the calculation of the amount might have involved some degree of approximation affords no ground for objection.  The Seventh Circuit has acknowledged "the difficulties inherent in ascertaining the amount of drugs attributable to an individual," and has explained that its "case law makes clear that this is a task that can be accomplished by reasonable approximation." *Dean*, 574 F.3d at 845-46.

Echevarria also challenges the reliability of the evidence on which the estimates of his weekly drug sales were based.  He argues that the evidence presented by the government on this issue was limited to statements obtained by a government case agent, and to the statements of Chavez, Perez, and his other co-conspirators. Echevarria argues that no one testified to the drug amounts under oath, and claims that his sentence was improperly calculated "solely on the plea and relevant conduct section of the [presentence investigation report]."  Pet. at 21.

This argument is mistaken in several respects.  First and foremost, as already noted, Echevarria himself admitted to the facts from which the 8-kilogram amount was derived.  Moreover, despite his insistence to the contrary, reliance upon the facts set forth in his presentence investigation report ("PSR") is entirely

-11-

acceptable.  The Seventh Circuit has specifically held that "[a] district court may rely on factual information supplied by a presentence report so long as it bears sufficient indicia of reliability to support its probable accuracy." *United States v. Salinas*, 365 F.3d 582, 587-58 (7th Cir. 2004).  Similarly, Rule 32 of the Federal Rules of Criminal Procedure provides that "[a]t sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact."  Fed. R. Crim. P. 32(i)(3)(A).  Importantly, "[w]hen the court relies on such information in sentencing a defendant, the defendant bears the burden of showing that the presentence report is inaccurate or unreliable."  *Salinas*, 365 F.3d at 587.  "A defendant does not satisfy this burden simply by denying the truth of what the presentence report represents as fact," but "must produce some evidence that calls the reliability or correctness of the alleged facts into question."  *Id.* (quotation marks omitted).  Here, there is no evidence suggesting that Echevarria objected at any point prior to or during his sentencing to any of the figures reported in the PSR.  Nor in his petition has he pointed to any evidence that might impugn the reliability of the information contained in the PSR.

Since the drug quantities attributed to Echevarria for purposes of his sentencing were not erroneous, his attorney was not ineffective in failing to challenge the amounts.  In short, none of

-12-

the instances of ineffectiveness alleged by Echevarria, either individually or cumulatively, constitutes a violation of his Sixth Amendment right to effective assistance of counsel.

**B.    Actual Innocence**

As an alternative basis for relief, Echevarria argues that he is "actually innocent of the sentence imposed on him."  See Pet. at 22.   Echevarria apparently regards "actual innocence" as an freestanding substantive ground for relief, as opposed to a means of circumventing the procedural bar caused by the failure to file a petition in a timely manner.  *See, e.g.*, *United States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005) ("Actual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by Appellant's failure timely to file his § 2255 motion."); *see also Green v. Hemingway*, 67 Fed. App'x. 255, 257 (6th Cir. 2003)("[T]he 'actual innocence' exception of the savings clause of § 2255, as it has been interpreted by this court, is 'actual innocence of the underlying, substantive offense,' not 'innocence' of a sentencing factor."); *cf. Araujo v. Chandler*, 435 F.3d 678, 682 (7th Cir. 2005) ("[I]t is clear that in this circuit . . . [that] actual innocence is not a freestanding exception to [§ 2244].").

Similarly awkward is Echevarria's contention that he is "actually innocent" of his *sentence*, as opposed to the underlying crime.  As the Third Circuit has observed regarding such claims,

-13-

"[t]he basic idea is that even a person guilty of an underlying crime can be 'actually innocent' of a sentence because the facts presented at sentencing were erroneous and thus do not support the particular sentence imposed." *Cristin v. Brennan*, 281 F.3d 404, 421 (3d Cir. 2002); *see also Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989) ("Demonstrating that an error is by its nature the kind of error that might have affected the accuracy of a death sentence is far from demonstrating that an individual defendant probably is 'actually innocent' of the sentence he or she received.").

Whatever sense can be made of the claim that one is actually innocent of a sentence, it is clear that Echevarria's argument fails, for it amounts merely to a repackaging of his argument that his sentence was improperly calculated because it was based on his prior convictions under Illinois law. Echevarria maintains that "the priors used in the [PSR] and government reports were obtained in violation of Federal Law and the Fifth Amendment" and that consequently "they never should have been used as Criminal History points to sentence the Petitioner." Pet. at 24. As already explained, however, Echevarria's sentence was properly calculated. His actual innocence claim is without merit.

## C. Prosecutorial Misconduct

Echevarria's final argument is that his plea should be vacated because it was obtained by means of prosecutorial misconduct. He claims that there is "evidence to show that their [sic] was a

conspiracy between the federal agents and the federal government to make sure two of their prospective witnesses had the same story if and when I went to trial." Reply at 10. Specifically, Echevarria alleges that the government took efforts to ensure that Perez and Chavez were assigned to the same jail cell during their incarceration so that the two could coordinate their testimony in a way that would have supported the government's theory that the co-defendants were parties to a conspiracy. According to Echevarria, the government used the prospect of Chavez's and Perez's testimony as leverage to compel him to plead guilty. I am not convinced.

To begin with, Echevarria offers no factual basis for his claim. He notes that he attempted (unsuccessfully) to obtain prison records to establish whether Chavez and Perez had been placed in the same cell, and he urges that these are the "only records that could reveal . . . whether Chavez and Perez were placed in the same jail and same cell block together to enable them to conspire against the Petitioner." Reply at 11. However, Echevarria gives no reason for thinking that his request was anything other than a fishing expedition, or that his belief that Chavez and Perez were placed in the same cell is based on anything more than a hunch.

In addition, it is well-settled that "[w]here prosecutorial misconduct is found to be harmless, habeas relief cannot be granted." *United States ex rel. Cloutier v. Mote*, No. 00 C 5476, 2003 WL 76867, at *23 (N.D. Ill. Jan. 8, 2003) (citing *Brecht v.*

*Abrahamson*, 944 F.2d 1363, 1368 (7th Cir. 1991)). Even assuming that the government had engaged in the conduct Echevarria alleges, it is unclear how this might have affected his decision to plead guilty. In particular, Echevarria fails to explain any way in which Chavez or Perez would have testified to anything that he himself does not concede. For example, Echevarria admits that he bought cocaine from Chavez and Perez on essentially a weekly basis, that he resold the cocaine, and that on at least one occasion, he obtained drugs from one of his co-conspirators under a consignment arrangement.

Echevarria's argument here is similar to the one put forward by the defendant in *United States v. Byrd*, 669 F. Supp. 861 (N.D. Ill. 1987). The defendant in *Byrd* pleaded guilty to unlawful possession of a firearm. *Id.* at 862. He later filed a petition for habeas corpus, arguing, *inter alia*, that his plea was unconstitutional because of prosecutorial misconduct. *Id.* Specifically, he claimed that the government had forged money vouchers in an effort to persuade witnesses to testify against him before the grand jury. *Id.* at 870. In rejecting Byrd's argument, the court held that he had failed to "explain how this allegation bears any relationship to his entry into the guilty plea," and that he had "admitted, under oath, the facts underlying his indictment in open court." *Id.* The court further noted that "even if this

allegation were true, it could not have affected Byrd's decision to enter the guilty plea." *Id.*

The same is true here. Echevarria has offered no reason to believe that the prospect of Chavez's and Perez's testimony encouraged him to plead guilty or caused him to admit to facts to which he otherwise was not prepared to admit. Simply put, Echevarria's allegations of prosecutorial misconduct are completely unsubstantiated and provide no basis for granting his petition.

### D.   Echevarria's Request for an Evidentiary Hearing

In addition to his habeas petition, Echevarria has filed a separate petition in support of his request for an evidentiary hearing. As Echevarria himself concedes, there is no mandatory requirement that an evidentiary hearing be held in connection with a § 2255 motion. *See, e.g.*, *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996). Rule 8(a) of the Rules Governing Section 2255 Proceedings provides that "the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Rule 4(b) further states that if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Thus, while a "district court must grant an evidentiary hearing when the petitioner alleges facts that, if

proven, would entitle him to relief," a hearing is not required "when a petitioner's allegations are vague, conclusory, or palpably incredible rather than detailed and specific." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). Moreover, "[i]n order to show prejudice from ineffective assistance of counsel that led to the entering of a plea, the defendant must establish through *objective evidence* a reasonable probability that, but for counsel's advice, he would not have accepted the plea." *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (emphasis added).

As already discussed above, it is plain from the parties' briefs and from the record before me that Echevarria is not entitled to relief under § 2255. Accordingly, he is not entitled to an evidentiary hearing. For completeness, however, it is worth noting that his request for an evidentiary hearing must be dismissed on additional grounds. First, the allegations Echevarria raises in connection with his request for a hearing are exceedingly vague and insubstantial. Here, the only evidence Echevarria has submitted in support of his request is a sworn affidavit in which he avers, among other things, that "[he] only plead guilty because [his] lawyer told [him] that it was the easiest way to deal with the Federal government." Echevarria Aff. ¶ 10. Self-serving affidavits consisting of a petitioner's own statements do not constitute the type of objective evidence necessary to require an evidentiary hearing. *See, e.g.*, *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir.

1991) ("Toro's statement is self-serving and alone, insufficient to establish that, but for counsel's advice, there is a reasonable probability that he would have accepted the plea. Toro has not identified any objective evidence in support of his claim of prejudice.") (citations omitted); *see also Paters v. United States*, 159 F.3d 1043, 1047 n.5 (7th Cir. 1988); *Van Waeyenberghe v. United States*, 3:08-CV-456 RM, 3:04-CR-87(01) RM, 2009 WL 3294871, at *10 (N.D. Ind. Oct. 13, 2009) ("A signed declaration or affidavit from petitioner himself is nothing but a naked, self-serving assertion and doesn't in itself constitute 'objective evidence.'"); *Sandoval v. United States*, No. 04-cv-4056, 2007 WL 2937124, at *3 (C.D. Ill. Sept. 26, 2007); *Ellzey v. United States*, 210 F. Supp. 2d 1046, 1051 (C.D. Ill. 2002) ("Petitioner has presented no evidence other than his own self-serving affidavit, which, although made under penalty of perjury, is in itself insufficient under *Toro* to warrant a hearing.").

In his affidavit, Echevarria also claims that "[h]e never discussed anything about the points I would receive other then [sic] with [his] lawyer for approximately 5 minutes if that." Echevarria Aff. ¶ 11. Even if this were true, however, it would not form the basis for an ineffective assistance of counsel claim. For one thing, it is unclear why a five-minute conversation on the points he would receive for acceptance of responsibility should necessarily have been inadequate. Notably, in response to questioning during

his change of plea hearing, Echevarria answered that he had had enough time to speak with his attorney, that he had told his attorney everything he knew about the case, and that he was satisfied with his attorney's efforts and advice. Plea Tr. at 4:15-25. Echevarria was also told that he could talk to his attorney at any time during the hearing. Plea Tr. at 2:15-16. He never asked to do so. *Cf. United States v. Woolley*, 123 F.3d 627, 635 (7th Cir. 1997) (counsel was not ineffective for failing to discuss appeal waiver with defendant prior to change of plea hearing, where the judge specifically stopped the proceedings so that defendant and counsel could discuss the issue, and where defendant answered "no" when asked by judge whether she had any questions about the appeal waiver).

Nor do any of Echevarria's other allegations warrant an evidentiary hearing. In addition to the allegations considered above, for example, he states in his petition that his attorney "improperly . . . exerted pressure on [him] misrepresented material facts, and withheld information in order to induce a plea of guilty." Reply at 6. However, Echevarria never elaborates on the nature of this pressure or how it was exerted. He also states that he was "told by his counsel that he had to pled [sic] guilty and admit things that were not true, in order to get the 3-point reduction, for acceptance of Responsibility." Reply at 3. However, this claim is directly contradicted by his statements during the

plea hearing. It also bears repeating that these latter claims are not included in Echevarria's affidavit.

In short, Echevarria's allegations do not furnish the kind of evidence that would warrant an evidentiary hearing concerning his allegations. Accordingly, his petition for a hearing is denied.

### III. CONCLUSION

For the reasons discussed above, Echevarria's petition for a writ of habeas corpus and his motion for an evidentiary hearing are denied.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: March 2, 2010